**IN THE COURT OF APPEALS OF IOWA**

No. 19-1176
Filed September 11, 2019

**IN THE INTEREST OF G.B.,**
**Minor Child,**

**C.A., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Benton County, Barbara H. Liesveld, District Associate Judge.

　　A mother appeals the termination of her parental rights to her minor child. **AFFIRMED.**

　　Melody J. Butz of Butz Law Offices, PC, Center Point, for appellant mother.

　　Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

　　Kristin L. Denniger, Cedar Rapids, attorney and guardian ad litem for minor child.

　　Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her minor child. She argues: (1) termination is not in the child's best interests, (2) the State failed to make reasonable efforts at reunification, and (3) she should have been given additional time for reunification.[1]

## I. Background Facts and Proceedings

The child in interest was born in 2014.[2] About a year later, the mother gave birth to the child's half-sister. The mother gave birth to a third child in 2017; the child died as a result of sudden infant death syndrome. The mother has not attended any counseling in relation to the loss of her third child. Both living children were previously adjudicated children in need of assistance (CINA) in 2016 due to physical abuse of the child in interest by his half-sibling's father. The child again came to the attention of the Iowa Department of Human Services (DHS) in early May 2018 upon concerns for physical abuse; the child exhibited bruising to his buttocks and lower back. The child reported his mother's boyfriend, Steven, caused the bruising.[3] The mother and Steven confirmed Steven had spanked the child but denied it caused bruising. The record indicates the mother was present when the spanking occurred.

---

[1] The mother does not specifically challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court. In her petition on appeal, she only states "that even if statutory requirements for termination were met . . . it is not in the child's best interests to be terminated." We view this as a concession the State met its evidentiary burden. Consequently, we need not address this step in the three-step termination framework. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

[2] The child's father is unknown.

[3] Steven is not the father of either the child in interest or his half-sister.

The mother agreed to a safety plan under which she would prohibit contact between Steven and her children. However, the mother continued to allow Steven to be around the children. The State applied for temporary removal, which was granted in late May. The child was placed in the custody of DHS, and his half-sister was placed with her father. DHS established a case plan recommending the mother participate in mental-health services and obtain education on discipline and safe supervision. In July, the court formally confirmed removal and adjudicated the child CINA upon the stipulation of the parties.

At the time of adjudication, the court ordered preparation of a social-history report. The report noted the mother makes poor relationship decisions, puts men before her children, and did not believe Steven harmed the child. A dispositional hearing was held in August, at which time the mother continued to live with Steven and continued to refuse to acknowledge Steven harmed the child. The mother continued to live with Steven until late November, when he advised the mother she had to leave. Through January 2019, the mother's visitation with the child was sporadic. The mother has never progressed beyond fully-supervised visitation. She also failed to take any meaningful steps to address her mental-health issues. In its January permanency order, the juvenile court directed the State to initiate termination proceedings. In its order, the court noted "no party has requested additional services or assistance except mother is asking for a family team meeting."[4]

---

[4] The meeting was held in February.

The mother did not begin consistently attending visitations until around the time the permanency goal was modified to termination. The State filed its petition in February. The mother did not begin taking steps to address her mental-health issues until late March. The mother also continued to decline to participate in parenting education until shortly before the termination hearing. The mother obtained her own housing in April. Due to the contents of the home DHS observed during a visit, it was apparent a man was living in the home with the mother. The mother denied a man was living with her or that she had a boyfriend. However, the mother's mental-health records note the mother reported she had a boyfriend.

A termination hearing was held in April. The record indicates the day before the hearing, the mother filed a request for services asking that she be allowed a trial home placement, in-home visitation, and expanded visitation with less supervision.[5] Following a hearing, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(d) (2019). As noted, the mother appeals.

## II.     Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

---

[5] The filed request does not appear in our record on appeal. We assume the mother filed her request in the CINA case, the court file of which was not judicially noticed by the juvenile court.

**III.    Analysis**

A.    Best Interests and Statutory Exception

The mother argues termination of her parental rights is not in the child's best interests.  In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

In arguing termination is not in the child's best interests, the mother points to her progress with case-plan goals, her bond with the child, and the fact that termination will separate the child from his half-sibling.[6]  "The legislature has categorically determined 'the needs of a child are promoted by termination of parental rights' if grounds for termination of parental rights exist."  *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (quoting *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990)).  To some extent, the best-interests determination must be made upon past conduct.  *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).  This is because a "parent's past performance . . . may be indicative of the quality of the future care that parent is capable of providing."  *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *C.B.*, 611 N.W.2d at 495).

This child has been removed from the mother's care on two occasions due to physical abuse by two of the mother's paramours.  On both occasions, the mother remained in a relationship with the paramour and declined to acknowledge

---

[6] In the best-interests section of her petition on appeal, the mother also makes many complaints about the services she was provided.  We consider those complaints in conjunction with her reasonable-efforts challenge.

the abuse. She has a history of failing to protect her children properly. She has made poor choices in men with whom she enters relationships and has a propensity to put her relationships before the well-being of her children. The record supports a conclusion that the mother is in a relationship with a new man, which the mother denies. The mother also has mental-health issues she has not meaningfully addressed. Based on the mother's past performance, the quality of future care she can provide is murky at best.

As to the mother's progress with case-plan goals, we are unable to agree with her that her progress renders termination contrary to the child's best interests. The mother was sporadic in attending visitation for most of the case, which caused the child emotional trauma, and she failed to meaningfully address her mental-health issues. While the mother did begin to make progress with goals in January 2019, she only did so when the possibility of termination reared its head. *See C.B.*, 611 N.W.2d at 495 ("A parent cannot wait until the eve of termination . . . to begin to express an interest in parenting."). We agree with the mother that siblings should be kept together whenever possible. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). However, the primary concern is what is in the child's best interests. *Id.* Upon our de novo review of the record, we find termination of the mother's parental rights to be in the child's best interests.

As to the mother's claim that her bond with the child should preclude termination pursuant to the permissive statutory exception contained in Iowa Code section 232.116(3)(c), while we acknowledge the mother and child share a bond, we find the evidence insufficient to show "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." *See In re A.S.*, 906

N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish exception to termination).

### B. Reasonable Efforts

Next, the mother argues the State failed to make reasonable efforts at reunification. The State contests error preservation. It is true that "DHS is to provide 'every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child.'" *L.T.,* 924 N.W.2d at 528 (quoting Iowa Code § 232.102(7)). However, while DHS "has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.,* 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

The mother did not alert the juvenile court of her dissatisfaction with services until the day before the termination hearing. Her challenge is not preserved for our review. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting parent must inform the juvenile court of a reasonable-efforts challenge in order to preserve error); *In re S.J.*, No. 14-0978, 2014 WL 4231161, at *2 (Iowa Ct. App. Aug. 27, 2014) ("A challenge to the sufficiency of the State's efforts to reunite parents with their children should be raised when the services are offered."); *see also In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). In the alternative, we conclude the State met its reasonable-efforts mandate. The fact that the mother did not meaningfully engage in services until toward the end of the proceedings does not fall on the State.

C.    Extension

The mother suggests she should have been afforded additional time to work toward reunification.    If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b).    Iowa Code § 232.117(5).    Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."    The juvenile court was unable to make such a finding.

Upon our de novo review of the record, we are also unable to affirmatively conclude a need for removal would no longer exist after a six-month extension. Given the mother's history, we agree with the State that the mother's "last-minute efforts are insufficient to show that the mother can remain on this trajectory" and be an appropriate placement within six months.

> There are a number of stern realities faced by a juvenile judge in any case of this kind.  Among the most important is the relentless passage of precious time.  The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.  Neither will childhood await the wanderings of judicial process.  The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.
> The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills.  In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232.  But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The same reasoning controls the mother's request for an extension. We conclude an extension of time is unwarranted.

**IV.    Conclusion**

We affirm the termination of the mother's parental rights.

**AFFIRMED.**